ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C Atlanta

APR 1 0 2008

JAMES N. HATTEN, CLERK
By: Deputy Clerk

| | |
|---|---|
| MONTEAGLE MEDIA, INC., d/b/a ALPHA TICKETS, | |
| Plaintiff, | |
| v. | Case No. 1:08-CV-1398 |
| STUBHUB, INC., a foreign corporation, and EBAY, INC., a foreign corporation | |
| Defendants. | |

## COMPLAINT

COMES NOW Plaintiff and respectfully shows the Court the following:

## I. PARTIES

1. Plaintiff, Monteagle Media, Inc. is a Georgia corporation with its principal place of business and registered agent in Fulton County, within this Atlanta Division of the Northern District.

2. Plaintiff Monteagle Media does business as Alpha Tickets.

3. Defendant StubHub, Inc., ("StubHub") is a California corporation.

4. StubHub transacts business in the State of Georgia, in the Northern District, and within the Atlanta Division. Its maintains a registered agent within this

1

Division, in Gwinnett County, and may be served with legal process through National Registered Agents, Inc., 3716 Venture Pkwy, Duluth, GA 30096.

5. eBay, Inc. is a Delaware corporation with its principal place of business at 2145 Hamilton Ave., San Jose, CA 95125. It maintains a registered agent, National Registered Agents, Inc., 2030 Main St. Suite 1030, Irvine, CA 92614 where it may be served with process.

## II. FEDERAL JURISDICTION

6. The Court has personal jurisdiction over Defendant StubHub, which maintains an office in this Division and otherwise regularly does business in this District.

7. The Court has personal jurisdiction over Defendant eBay, as it regularly does business in this District.

8. Subject matter jurisdiction exists because the parties are diverse, and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1331. Subject matter jurisdiction alternatively exists under 28 U.S.C. § 1332 due to the federal antitrust claims in this action. *See* 15 U.S.C. § 1, et seq.

9. Venue is proper as to both Defendants under 15 U.S.C. § 22. Venue is also proper in this Court with respect to Defendant StubHub because StubHub has an agent in this District.

## III. OPERATIVE FACTS

10. Defendant StubHub describes itself as the largest ticket marketplace in the world.

11. According to StubHub, it began in 2000.

12. StubHub does a large portion of its business with "Professional Ticket Resellers" through its LargeSeller Program.

13. StubHub recently sold its 10,000,000th ticket.

14. StubHub was acquired by eBay in early 2007 for approximately $310,000,000.

15. Allen M. Raines is an officer of Monteagle Media, which does business as Alpha Tickets, and he is in charge of its day-to-day operations.

16. Allen M. Raines is in charge of Alpha Tickets' day-to-day operations.

17. Mr. Raines is a duly licensed ticket broker under Georgia law. Alpha Tickets is a member of the National Association of Ticket Brokers.

18. Alpha Tickets is based in Alpharetta, Georgia. At the time of the dispute which is the subject of this litigation, Alpha Tickets had four employees. Now Alpha Tickets has no full-time employees.

19. Since it began doing business in January 2002, Alpha Tickets has sold more than 50,000 tickets. One important part of Alpha Tickets' business is selling tickets on its website.

20. In addition, selling tickets through StubHub constituted a substantial part of Alpha Tickets' business before this dispute.

21. Also, buying and selling tickets through eBay constituted a substantial part of Alpha Tickets' business before this dispute.

**Alpha Tickets and StubHub**

22. Alpha Tickets began doing business with StubHub in the summer of 2003.

23. Up until the events which are the subject of this lawsuit, Alpha Tickets had an excellent relationship with StubHub.

24. StubHub describes itself as the world's largest ticket marketplace.

25. StubHub has relationships with many ticket brokers, and did hundreds of transactions with Alpha Tickets.

**Alpha Tickets and eBay**

26. Alpha Tickets began doing business with eBay in January 2002.

27. eBay bills itself as "the World's Online Marketplace."

28. Up until the events which are the subject of this lawsuit, Alpha Tickets had a 100% positive feedback rating on eBay based on more than 1000 users reporting feedback, and an excellent relationship with eBay.

**The Mistaken Confirmation for Badges for the 2007 Masters**

29. Around mid-day on Tuesday, April 3, 2007, Mr. Raines was en route to Augusta, Georgia for the 2007 Masters golf tournament. He was traveling from Atlanta, Georgia, where the previous night the NCAA Basketball Championship game had been played.

30. The Masters is a golf tournament in Augusta, Georgia which is played over four days.

31. On that Tuesday, Alpha Tickets had eleven (11) badges for the opening (Thursday) round of the Masters posted for sale on StubHub.

32. Around midday on April 3, 2007, StubHub contacted Alpha Tickets to see if it could confirm an order for all eleven badges for the opening round of the tournament.

33. When StubHub contacted Alpha Tickets, Sarah Pharr, who was working in Alpha Tickets' office, did not confirm the order.

34. Instead Ms. Pharr contacted Mr. Raines.

35. Mr. Raines asked Ms. Pharr not to confirm the order until she heard back from Mr. Raines.

36. Despite having not yet heard back from Mr. Raines, Ms. Pharr mistakenly confirmed the order.

## StubHub Agrees To Void The Order.

37. Upon learning of the mistaken confirmation, Alpha Tickets immediately informed StubHub that the confirmation was a mistake.

38. Specifically within only a few minutes of the mistaken confirmation, Alpha Tickets' Brad Mackler, who is part-owner of Alpha Tickets, contacted StubHub's Conrad Centeno, who was in Augusta, Georgia, at the Masters.

39. Centeno assured Alpha Tickets that "Everything would be taken care of" -- that voiding the order would not be a problem.

40. After the first phone call with Centeno, Alpha Tickets made another phone call to confirm that the order was cancelled.

41. A few minutes later, Alpha Tickets began asking for written confirmation that the order was cancelled.

42. As Tuesday, April 3, wore on, Alpha Tickets made several attempts to contact Conrad Centeno and other StubHub representatives in an effort to obtain

written confirmation of his promise that "everything would be taken care of," and that voiding the order would not be a problem.

43. Centeno stopped taking calls from Alpha Tickets' Raines and Mackler during that afternoon of April 3, 2007.

44. Finally, Centeno took a call around 8:00 P.M., and informed Alpha Tickets he was still working on the situation.

45. During the several hours between Centeno's promise that everything would be taken care of and the nightfall phone call where he indicated he was still working on the situation, the prices for the next day's badges had increased dramatically.

46. Alpha Tickets did not attempt to fill the order during those seven hours because Centeno had told them "everything would be taken care of" and that the order would be voided. Alpha Tickets reasonably relied on Centeno's promise.

47. Around 9:00 P.M. Tuesday, Centeno referred Alpha Tickets to California representatives of StubHub, who then assured Alpha Tickets that StubHub would call first thing in the morning.

**StubHub Agrees to Void The Order And Signs A Release**

48. On the morning of Wednesday, April 4, 2007, StubHub's California representatives did not call as promised.

49. Finally, Alpha Tickets reached StubHub's Regional Manager Craig Cucinello, and informed him that unless StubHub honored its agreement to void the order for the eleven badges, Alpha Tickets would have to take measures to protect itself by liquidating other badges on orders previously confirmed through StubHub.

50. Cucinello referred Alpha Tickets to John Whelan, StubHub's Director of Customer Service.

51. Whelan of StubHub and Alpha Tickets negotiated an agreement. (*See* Release *attached as* Ex. A.)

52. With StubHub having attempted to back out of its promise to void the mistaken order for eleven Thursday badges, Alpha Tickets was concerned that if Alpha Tickets delivered other badges, StubHub might refuse to pay.

53. Having legitimate concerns over whether StubHub may withhold payment on other Masters' orders, Alpha Tickets negotiated a provision whereby it would receive payment for other outstanding orders for badges for the Masters prior to delivery of those badges.

54. On behalf of StubHub, Whelan signed an agreement confirming that the order for the eleven Thursday badges was void, providing that payment for other Masters' badges be made prior to delivery, and, perhaps most importantly, both

parties agreed "to keep this entire matter confidential to any and all parties. This element shall survive this agreement in all instances." (Ex. A.)

55. Alpha Tickets performed its obligations under the agreement, and delivery of badges throughout the 2007 Masters was accomplished without any problems.

56. At the conclusion of the 2007 Masters, Alpha Tickets' principals believed the matter was amicably resolved and behind them.

## StubHub Discloses the Existence of the Confidential Agreement, and Agrees with eBay To Refuse To Deal With Alpha Tickets.

57. On April 10, 2007, StubHub wrote to Alpha Tickets and "indefinitely suspended" its privileges with StubHub. (*See* Ex. B, Allison Willoughby to Alpha Tickets, April 10, 2007.)

58. Even though StubHub had signed an agreement, just six days earlier which provided that the parties "mutually agree to keep this entire matter confidential to any and all parties," StubHub informed Alpha Tickets that its privileges with PayPal and eBay were "indefinitely suspended" as well. Thus, it is clear StubHub revealed the matter to third parties.

59. On April 16, 2008, Alpha Tickets demanded that all its privileges be reinstated.

60. StubHub refused to reinstate Alpha Tickets' privileges.

9

61. eBay, acting in concert with StubHub, suspended Alpha Tickets' privileges.

62. eBay has refused to reinstate Alpha Tickets' privileges.

## V. LIABILITY OF DEFENDANTS

### COUNT I: STUBHUB IS LIABLE FOR BREACH OF CONTRACT

63. Alpha Tickets and StubHub entered into a legally valid contract on April 4, 2007.

64. In the contract, StubHub released "any claims, causes of action, rights, and indemnification against each other, either known or unknown, existing as of this date." (Ex. A.)

65. That contract further provided, among other things, that the parties "mutually agree to keep this entire matter confidential to any and all parties. This element shall survive this agreement in all instances." (*Id.*)

66. StubHub breached the release by threatening to invoke civil and criminal remedies in its April 10, 2007 letter.

67. StubHub breached the confidentiality provision of the agreement by contacting eBay about the dispute and causing eBay to suspend Alpha Tickets' privileges.

68. StubHub's actions caused harm to Alpha Tickets in that buying and selling tickets on eBay had previously been an important part of Alpha Tickets' business.

69. As the result of StubHub's breach of the release, Alpha Tickets has been harmed due to no longer being able to sell tickets through eBay, which has resulted in lost profits.

### COUNT II: STUBHUB IS LIABLE FOR CONVERSION.

70. After breaching the release, StubHub seized $8,304.16 which was the amount in Alpha Tickets' PayPal account at the time of the dispute.

71. StubHub had no legal right to assert control over funds belonging to Alpha Tickets in the possession of a third party.

72. The money in the PayPal account is a specifically identifiable sum of money.

73. Alpha Tickets demanded the return of the money in the PayPal account.

74. StubHub has refused to release the money seized in the PayPal account.

75. StubHub is liable for conversion, which is an intentional tort, such that Alpha Tickets is entitled to punitive damages and attorneys' fees pursuant to O.C.G.A. § 13-6-11.

### COUNT III: STUBHUB IS LIABLE UNDER 15 U.S.C. § 1

76. Following the dispute over the Master's badges and the execution of the release, StubHub agreed with eBay to refuse to deal with Alpha Tickets.

77. Specifically, StubHub wrote to Alpha Tickets, informing it that its privileges

on both StubHub and eBay were suspended.

78. After Alpha Tickets demanded that its privilege be reinstated, StubHub refused.

79. As the world's largest ticket marketplace, StubHub possesses significant market power with respect to the online sale of tickets.

80. This concerted refusal to deal reflects anti-competitive conduct of the sort that the anti-trust laws are designed to prevent.

81. The concerted refusal to deal interferes with interstate commerce, reflects an anticompetitive purpose to exclude Alpha Tickets from the market, and is *per se* illegal.

82. Alpha Tickets has been harmed by StubHub's participation in the concerted refusal to deal, and has suffered damages.

### COUNT IV: EBAY IS LIABLE UNDER 15 U.S.C. § 1

83. Following the dispute over the Master's badges and the execution of the release, StubHub agreed with eBay to refuse to deal with Alpha Tickets.

84. Specifically, StubHub wrote to Alpha Tickets, informing it that its privileges on both StubHub and eBay were suspended.

85. Alpha Tickets demanded that its privilege be reinstated, and eBay continues to refuse to do business with Alpha Tickets.

86. As the world's largest online marketplace, eBay possesses significant market power with respect to the online sale of tickets.

87. This concerted refusal to deal reflects anti-competitive conduct of the sort that the anti-trust laws are designed to prevent.

88. The concerted refusal to deal interferes with interstate commerce, reflects an anticompetitive purpose to exclude Alpha Tickets from the market, and is *per se* illegal.

89. Alpha Tickets has been harmed by eBay's participation in the concerted refusal to deal, and has suffered damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the following:

(a) that Plaintiff be awarded damages for breach of the release, including lost profits;

(b) that Plaintiff be awarded attorneys' fees under O.C.G.A. § 13-6-11;

(c) that Plaintiff be awarded all available remedies under 15 U.S.C. § 1 *et seq* including, but not limited to treble damages, and attorneys' fees under 15 U.S.C. § 4,

(d) that Plaintiff have a trial by jury; and

(d) that Plaintiff be awarded all other relief the court deems just and proper

under the circumstances.

Respectfully submitted, this 9th day of April, 2008.

DAUGHTERY, CRAWFORD,
FULLER & BROWN, LLP

By: _____
Peter J. Daughtery
Georgia Bar No. 205881
pete@dcfblaw.com
J. Clay Fuller
Georgia Bar No. 280207
clay@dcfblaw.com

1430 Wynnton Road
Post Office Box 1118
Columbus, Georgia 31902
Telephone: 706.320.9646
Facsimile: 706.494.0221